NOT DESIGNATED FOR PUBLICATION

Nos. 117,671
117,678

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.R. and C.R.,
Minor Children.


MEMORANDUM OPINION


Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed March 23, 2018.
Affirmed.


*Juanita M. Carlson*, of Carlson Law Office, of Lawrence, for appellant natural mother.


*Kate Duncan Butler*, assistant district attorney, and *Charles E. Branson*, district attorney, for
appellee.


*Emily A. Hartz*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence,
guardian ad litem.


Before BRUNS, P.J., PIERRON and POWELL, JJ.


PER CURIAM: P.A. (Mother), the natural mother of M.R. and C.R. (the children),
appeals the district court's termination of her parental rights, arguing there was
insufficient evidence to support the district court's unfitness finding by clear and
convincing evidence and that the district court abused its discretion by finding it was in
the children's best interests to terminate her parental rights. After a careful review of the
record, we find no error and affirm the district court's termination of Mother's parental
rights.

1

Mother has two children who are the subject of this termination of parental rights proceeding: M.R. (born 2003) and C.R. (born 2005). The children have different fathers, and the termination of the fathers' parental rights is not subject to this appeal.

In 2008, the children were adjudicated children in need of care (CINC) because at the time Mother had substance abuse problems. The children were successfully reintegrated into Mother's home in 2009.

In October 2013, the Lawrence Police Department responded to a report of physical abuse between Mother and her boyfriend. The police took the children into protective custody, however, due to the unsanitary condition of the home which included dried cat feces, urine stains, fleas, and ants. The children were returned to Mother in November 2013, and Mother started to receive Family Preservation services.

On July 4, 2014, Mother reported the children missing around 10 p.m. after the children had not returned home from a friend's house, but the children were later located at Mother's home following a search. The children told the police that they had checked in with Mother when they got home at 9 p.m. and then fell asleep in M.R.'s bed. Officers took the children into protective custody based on the unsanitary condition of the home which included rotting food in the kitchen and bedrooms; cockroaches and ants on the living room floor; dirty clothes and urine stains on the bedroom floors; and cat feces in M.R.'s bed. The children appeared dirty and smelled of cat urine, and M.R. stated he had had little to eat that day besides cheese puffs. A few days later, the district court placed the children into the temporary custody of the Kansas Department for Children and Families (DCF), which then placed the children into the physical custody of C.R.'s paternal grandfather, A.R., in Valley Falls, Kansas.

In September 2014, the district court adjudicated the children CINC and set the case plan for reintegration. In relevant part, the order required Mother to obtain a mental health evaluation; maintain safe, stable, and clean housing; allow drop-in visits at her home from Kaw Valley Center (KVC) workers; submit to random urine analysis and breathalyzer tests; and attend visitation with the children.

The case plan and tasks were aimed at reintegration for the next year and a half. In March 2016, however, the district court found that reintegration was no longer viable because of the lack of progress by the parents and changed the case plan to adoption or custodianship. The following month, the State filed a motion for the termination of parental rights and alleged that the district court should (1) presume Mother unfit because the children were adjudicated CINC two or more times; and (2) find Mother unfit based on her physical, mental, or emotional neglect of the children; the failure to rehabilitate the family despite reasonable efforts by agencies; Mother's lack of effort to adjust her circumstances, conduct, or condition to meet the needs of the children; and her failure to carry out a reasonable plan directed at reintegration.

In July 2016, DCF removed the children from A.R.'s physical custody after M.R. reported that C.R.'s half-sister had sexually assaulted him. Though the subsequent investigation found the allegations unsubstantiated, the children were not returned to A.R.'s custody. Due to limited placement options, the children had to be separated, with C.R. being placed at a foster home in Riverton, Kansas, while M.R. was placed in a group home in Pittsburg, Kansas. M.R. later reported that he was sexually abused at the group home by another child and was moved to a foster home in Parsons, Kansas. C.R. also moved foster homes and was most recently placed in a home in Wichita, Kansas.

In October 2016, the district court held an evidentiary hearing on the State's motion to terminate parental rights. Past and current KVC caseworkers for the family testified. Mother's case plan required that she obtain and maintain safe, stable, and clean

3

housing and permit random drop-ins by KVC staff. In the spring of 2016, Mother lost her federal housing voucher after the children were removed. Mother told one KVC caseworker, Margaret Goodyear, she needed to find a one bedroom apartment to keep her voucher but she did not request any further assistance. For a period of time, Mother stayed with various friends. From August 2016 to the hearing, Mother stated that she was living with an older gentleman and she paid rent and utilities by cooking, cleaning, and running errands for him. Fawn Gahman-Anos, Mother's KVC caseworker from August 2015 to the hearing, testified that Mother's current residence was not suitable for reintegration because Mother refused to allow caseworkers to do a walk-through at the home. Gahman-Anos also testified that Mother only provided the man's first name, and that she had not verified the living arrangement or conducted a background check on him.

The case plan also required Mother to obtain a mental health evaluation. At the time of the hearing, although Mother was aware of this requirement, she had never obtained one. Mother testified that her KVC caseworkers had told her that it was her responsibility, but she could not afford one and was unaware she could obtain the evaluation at Healthcare Access. However, Goodyear testified that she asked Mother on a monthly basis about the evaluation and informed Mother that she could obtain an evaluation at little to no cost from Healthcare Access. Monica Luedtke, the KVC permanency supervisor, also testified that KVC required parents to complete a budget before it provided financial assistance for services. Goodyear stated she completed a budget with Mother, and once that budget was completed, Mother was required to set up an appointment for the evaluation to determine the cost. Mother did not follow through with the evaluation but told KVC that she was receiving alternative mental health services through her church.

In December 2015, the district court required Mother to obtain a parenting and psychological evaluation and follow any recommendations as part of her case plan. In February 2016, Dr. Jean Dirks at Bert Nash Community Center conducted an evaluation

4

and diagnosed Mother with delirium due to untreated diabetes after Mother stated that she had not taken her diabetes medication for close to three years. Upon checking with Mother's primary care physician, Dr. Dirks learned that Mother was not currently prescribed medication for her diabetes. Dr. Dirks found that Mother's untreated diabetes negatively impacted her parenting. Following the evaluation, Dr. Dirks hand-delivered a letter referring Mother to Healthcare Access for a diabetes assessment and provided Mother with a copy which also required that she take diabetes education classes. In her evaluation, Dr. Dirks also found that Mother would benefit from individual therapy and further parenting training.

Mother did not follow Dr. Dirks' recommendations regarding her diabetes and specifically testified that she did not attend a diabetes education class. Goodyear stated that she spoke with Mother about the need to obtain a diabetes assessment and gave her the information for Healthcare Access. Mother stated that she knew Healthcare Access could provide her with a diabetes assessment, but Goodyear testified that she did not believe Mother ever obtained a diabetes assessment while she was working the case.

Mother also testified that at the time of the hearing she was taking her diabetes medication regularly, but Gahman-Anos testified that Mother refused to sign a medical records release form for KVC to verify this. Mother did provide Gahman-Anos with a hand-written list of the prescription medications that she had been taking, which included diabetes and anxiety medication. Mother testified that she takes her anxiety medication as needed. Mother also listed prescriptions for depression and a mood stabilizer.

Mother testified that she failed to start individual therapy during this case but claimed to seek out mental health treatment as needed from her sponsor and another member of her 12-step program. She also stated that she spoke informally with her friend who is a licensed therapist following the death of her father.

5

Mother also testified she did not work a regular job and claimed she had applied for social security benefits because she allegedly had post-traumatic stress disorder (PTSD), anxiety, depression, migraines, arthritic knees, and back spasms. Throughout this case, Mother went through four appeals for her social security benefits and had reapplied at the time of the hearing. Mother failed to substantiate any of this. Mother reported that in addition to helping the older gentleman with whom she lived, she made around $200 a month by doing odd jobs for friends.

Caroline Trayer, a KVC family therapist, had worked with the family since May 2015. Trayer testified that she was concerned about Mother's continuing anxiety and depression. Trayer told Mother to seek out services and offered to help her, but she did not believe Mother ever followed through. Trayer also worked with the family on Mother's parenting skills and the children's inappropriate touching behavior. Trayer described Mother's strengths as her ability to talk with the children about grief, healthy boundaries, and her concern for the children's schooling and medication, but Trayer expressed concerns about Mother's unwillingness to learn additional parenting skills. After 18 months of therapy, Trayer testified Mother still needed to improve her supervision skills and structure to adequately care for the children.

Evidence at the hearing showed that the children have special needs. M.R. was diagnosed with anxiety, PTSD, and attention deficit hyperactivity disorder (ADHD). Trayer worked with M.R. during family therapy on addressing his past traumas, which involved a baby-sitter sexually abusing him and being held hostage when he was younger. M.R. had an individualized education program for handwriting and learning. M.R. takes ADHD medication and attends occupational therapy for handwriting. C.R. was diagnosed with an impulse control disorder due to her oppositional behavior to authority, binge eating, and stealing. When C.R. lived with A.R., she was banned from a local gas station for stealing. C.R. is currently taking prescribed medication for depression and ADHD.

6

KVC took the position that the district court should terminate the parental rights, as there was concern about Mother's lack of progress in the case and the need for Mother to be in KVC-verified stable, safe, and clean housing; become more financially stable; and to address her mental health needs appropriately.

Trayer stated that a present placement with Mother would be detrimental to the children. Trayer stated that Mother needed to better regulate her emotions, describing Mother's behavior as erratic at times. Trayer testified that it appeared Mother was not consistently taking her diabetes or mental health medication. She also stated that she wanted more documentation of Mother's participation in a 12-step program and mental health treatment. Trayer testified that Mother would also need to better regulate herself before she could properly supervise and provide the structure that the children needed.

The district court found the presumption of unfitness applied to Mother due to the children's previous CINC adjudication and further found that Mother had failed to rebut this presumption. The district court also found that clear and convincing evidence supported the finding that Mother was unfit and would remain unfit for the foreseeable future because (1) she had physically, mentally, or emotionally neglected the children; (2) she was unable to change her conduct and condition to meet the children's needs; and (3) despite reasonable efforts by KVC and other service providers, Mother was unable to meet her case plan tasks. The district court found that it was in each of M.R.'s and C.R.'s best interests to terminate Mother's parental rights.

Mother timely appeals.

I.      DID CLEAR AND CONVINCING EVIDENCE SUPPORT THE DISTRICT COURT'S UNFITNESS FINDING?

On appeal, Mother claims there was insufficient evidence to support the district court's unfitness finding and asserts the district court erred by making numerous factual errors. Mother then argues that the district court abused its discretion by finding the termination of her parental rights was in the children's best interests. Each argument will be addressed in turn.

The revised Kansas Code for Care of Children, K.S.A. 2017 Supp. 38-2201 et seq., lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2017 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. K.S.A. 2017 Supp. 38-2269(f). The district court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2017 Supp. 38-2269(b).

If a child has been adjudicated a CINC, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a).

When reviewing a district court's findings on this point, our standard of review is clear:  The district court's findings must be supported by clear and convincing evidence. K.S.A. 2017 Supp. 38-2269(a). We evaluate this by determining whether such evidence could have convinced a rational fact-finder such facts were highly probable, i.e., by clear and convincing evidence, when viewed in the light most favorable to the State. In making this determination, we do not reweigh the evidence, judge the credibility of the witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

A.    *Mother's Present Unfitness*

The district court found that the presumption of unfitness applied to Mother under K.S.A. 2017 Supp. 38-2271(a)(3) because the children were twice adjudicated CINC while in her physical custody.

K.S.A. 2017 Supp. 38-2271 provides in relevant part:

"(a) It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

. . . .

(3) on two or more prior occasions a child in the physical custody of the parent has been adjudicated a child in need of care as defined by K.S.A. 2017 Supp. 38-2202(d)(1), (d)(3), (d)(5) or (d)(11), and amendments thereto, or comparable proceedings under the laws of another jurisdiction;

. . . .

"(b) The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2017 Supp. 38-2266 et seq., and amendments thereto."

Mother does not assert that the district court erred in finding that the presumption applies in her case. Rather, Mother briefly argues that she has rebutted the presumption by a preponderance of the evidence because she (1) achieved adequate and clean housing;

9

(2) had no substance abuse problems; (3) was not in an abusive relationship; (4) had a safety plan in place; and (5) adequately handled her diabetes and mental health issues.

Mother's assertions are not supported by the record on appeal. First, Mother did not have adequate housing as the district court found that it remained undetermined whether Mother had adequate housing. Second, as to Mother's claims of no longer having substance abuse problems, abusive relationships, and having a safety plan, the record fails to support these assertions as being sufficiently overcome to rebut the presumption of unfitness. Although her progress here was positive, the district court relied on other factors to find Mother unfit, such as her inability to provide suitable supervision to the children and her failure to obtain a stable, safe, and clean home.

Mother also has not overcome the presumption of unfitness based on her claim that she adequately treats her diabetes and mental health. Mother testified that she regularly takes insulin, but such a claim could not be verified as Mother refused to sign a medical release form. Moreover, Mother never obtained a mental health evaluation as required in her case plan. Trayer and Gahman-Anos both testified that they wanted to see improvement in addressing Mother's mental health before reintegrating the children with her. Finally, despite Dr. Dirks' recommendation, Mother failed to receive individual therapy during this case. Mother has not rebutted her presumed unfitness based on her assertions and the record on appeal.

Even if we found that presumed unfitness did not apply, the district court found clear and convincing evidence supported finding Mother unfit under three statutory factors:

- K.S.A. 2017 Supp. 38-2269(b)(4)—Mother physically, mentally or emotionally neglected the children.

- K.S.A. 2017 Supp. 38-2269(b)(8)—Mother failed to adjust her circumstances, conduct, or conditions to meet the needs of the children.
- K.S.A. 2017 Supp. 38-2269(c)(3)—Mother failed to carry out a reasonable plan approved by the court directed toward the integration of the children into her home.

Mother does not expressly argue that insufficient evidence supports the statutory factors the district court relied on below. But we review a district court's findings of unfitness under the statutory factors to determine if the findings are supported by clear and convincing evidence. Although the statutory subsections are similar in nature and overlap, the district court's factual findings that support termination under one statutory subsection alone may support termination of parental rights under another subsection. See *In re A.M.*, No. 116,986, 2017 WL 3001353, *4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (November 9, 2017).

1. *K.S.A. 2017 Supp. 38-2269(b)(4)*

K.S.A. 2017 Supp. 38-2269(b)(4) states that in considering a parent's fitness, the district court shall consider the "physical, mental or emotional abuse or neglect or sexual abuse of a child." Here, the district court found Mother had physically, mentally, or emotionally neglected the children. Mother does not specifically challenge whether clear and convincing evidence supports the district court's finding, and arguably, Mother's failure to adequately brief the issue indicates waiver of the issue. See *In re M.A.*, No. 110,069, 2013 WL 6799335, at *7 (Kan. App. 2013) (unpublished opinion). Nevertheless, the record shows that the children were taken into police protective custody due to the unsanitary condition of Mother's home. The home contained rotting food in the kitchen and bedrooms, cockroaches and ants in the living room, cat droppings on M.R.'s bed, and urine stains on the bedroom floors. The children also smelled of urine and appeared dirty, and M.R. reported he had little to eat that day. In viewing the evidence in

11

the light most favorable to the State, it is highly probable that Mother neglected the children.

2.    *K.S.A. 2017 Supp. 38-2269(b)(8)*

K.S.A. 2017 Supp. 38-2269(b)(8) states that in considering a parent's fitness, the district court shall consider the "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child."

Mother argues the district court made numerous factual errors on appeal, which include: (1) using Mother's past substance abuse and abusive relationships to find her presently unfit; (3) finding Mother does not maintain a clean home; (4) considering Mother's lack of income; (4) finding that Mother could not parent due to her disabilities; and (5) overly relying on Trayer's assessment of Mother's parenting skills.

The State responds, and we agree, that the district court did not improperly use Mother's past substance abuse, disability, housing, or lack of income to find her presently unfit. Instead, the district court made factual findings based on Mother's past and present behavior to support its finding that Mother lacked an effort to change her circumstances, conduct, or condition to meet the needs of the children under K.S.A. 2017 Supp. 38-2269(b)(8).

Mother also appears to argue the district court found her unfit under K.S.A. 2017 Supp. 38-2269(b)(1) based on an "[e]motional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child." But we find that the district court considered Mother's failure to follow her case plan and service providers' recommendations relating to her physical and mental health as support for

12

finding that Mother lacked the effort to change her circumstances, conduct, or condition to meet the needs of the children.

The district court specifically found Mother resisted certain mental and physical health services that were offered to her. One of the services included Dr. Dirks' recommendation that Mother obtain a diabetes assessment and attend diabetes education classes. Dr. Dirks found that Mother showed signs of confusion and diagnosed Mother with delirium based on her untreated diabetes. Dr. Dirks found Mother's failure to properly treat her diabetes negatively impacted her ability to parent.

Additionally, Mother resisted learning parenting techniques at times during her family therapy sessions. Mother claims the district court over-emphasized Trayer's testimony on this point, but we are forbidden from reweighing the evidence and reassessing the district court's credibility determinations. See *In re B.D.-Y.*, 286 Kan. at 705. The district court used Trayer's insights to assess whether Mother showed an effort to change her conduct, i.e., her parenting skills, through the family therapy sessions which began in May 2015. Trayer testified that Mother undermined any effort to improve her parenting skills by claiming to already know techniques presented to her. Trayer also testified that Mother had trouble recognizing M.R.'s special needs and knowing the proper amount of supervision and care that the children required. Trayer opined that after 18 months of family therapy, a present placement with Mother would be detrimental to the children.

Mother also argues the district court improperly blamed Mother for the children's problem behaviors which developed only after the children were removed from her custody, i.e., stealing, binge eating, and inappropriate touching between the children. However, even if the district court erred in attributing the children's behaviors to Mother's care, Trayer testified that Mother still had not progressed to the level of supervision and monitoring that the children needed to address the behaviors. Accordingly, the district

court's finding that Mother's lack of effort to change her conduct or condition based her resistance and lack of progress in her parenting training is supported by clear and convincing evidence.

Finally, clear and convincing evidence supports the district court's finding that Mother lacked the effort to obtain adequate or stable, safe, and clean housing. The children were removed from Mother's physical custody due to the unsanitary conditions of her home, and Mother refused to permit KVC to do a walk-through or properly assess whether her most recent housing arrangement was adequate and clean. Mother's resistance to KVC's attempts to help rehabilitate the family provides clear and convincing evidence that Mother showed a lack of effort to change her circumstances and conditions to meet the needs of the children.

3.      *K.S.A. 2017 Supp. 38-2269(c)(3)*

K.S.A. 2017 Supp. 38-2269(c) provides that the district court shall consider additional factors "when a child is not in the physical custody of a parent." K.S.A. 2017 Supp. 38-2269(c)(3) requires the district court to consider a parent's "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

In March 2016, the district court found that reintegration was no longer a viable goal, citing the parents' or children's inadequate or lack of progress on achieving the permanency goal. Following the evidentiary hearing, the district court found that Mother had failed to complete her case plan task for obtaining a mental health evaluation. Mother does not challenge the evidence supporting the district court's finding, but rather asserts that the district court did not properly consider mitigating circumstances for why she did not obtain the evaluation: Goodyear, an unlicensed social worker, ineffectively assisted her. On a related note, Mother also argues the district court erred in finding that private or

public agencies made reasonable efforts due to Goodyear's involvement in this case. We find Mother's arguments without merit.

First, Mother asks us to reweigh the evidence and reassess the district court's witness credibility determinations which we are forbidden to do. See *In re B.D.-Y*, 286 Kan. at 705. Mother's argument also overlooks that several other KVC workers other than Goodyear assisted Mother throughout this case. Moreover, Goodyear testified she was required to consult with her supervisor, Luedtke, a licensed social worker, before making any decision, and that she never made a decision alone. Second, and perhaps more importantly, the district court did not expressly rely on K.S.A. 2017 Supp. 38-2269(b)(7), which states that in considering a parent's fitness, the district court shall consider the "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." Rather the district court found that despite reasonable efforts by service providers, Mother resisted such efforts meant to aid her in completing her case plan tasks aimed at reintegrating the children.

From September 2014 until December 2015, the case plan required Mother to obtain a mental health evaluation. Mother testified that she had known she needed to obtain an evaluation since the second case plan meeting but that she could not afford one. But Luedtke testified that in order for KVC to assist Mother financially she would need to complete a budget. Goodyear testified that she completed a budget with Mother when she was still living in her apartment and referred Mother to Healthcare Access—a low to no cost medical provider—to schedule an evaluation. Goodyear stated she spoke with Mother about the mental health evaluation on a monthly basis while she worked the case. However, both Luedtke and Goodyear testified that Mother told them she felt she did not need a mental health evaluation because she was obtaining alternative services through her church. Clear and convincing evidence supports the district court's finding that Mother failed to complete her case plan task for obtaining a mental health evaluation.

15

Mother also argues that the district court improperly weighed Mother's mental health concerns in finding her unfit because Mother did not have any current mental health issues at the time of the termination hearing. Again, Mother asks us to improperly reweigh the evidence. During Mother's parenting and psychological evaluation with Dr. Dirks, Dr. Dirks noted Mother's mental health history and Mother's present healthcare concerns. Trayer and Gahman-Anos both testified that they wanted to see improvement in Mother's mental health before reintegrating the children with her. Unfortunately, the district court arguably could not assess Mother's current mental health at the time of the hearing because Mother refused to sign a release for her medical record and, as stated above, had failed to obtain a mental health evaluation. The district court did not err in considering the impact of Mother's mental health on her ability to parent the children.

Mother also did not complete her case plan task for maintaining or obtaining a safe, stable, and clean home. The children were removed from Mother's home due to unsanitary conditions, and Mother lost her apartment in the spring of 2016. While Mother stated she lost her federal housing voucher because the children were removed and she needed to find a smaller apartment, Mother did not request assistance from KVC in her apartment search. Instead, Mother stayed with various friends until she began to live with an older man in August 2016. Mother refused to allow KVC to conduct a walk-through of the residence to determine if it was adequate and safe for the children. Gahman-Anos testified that because a walk-through was not completed, she could not assess whether the home was adequate for reintegration or safe, stable, and clean. Clear and convincing evidence supports the district court's finding that Mother did not complete her case plan task to obtain or maintain safe, stable, and clean housing.

B.    *Mother's Unfitness for the Foreseeable Future*

Once a district court finds present unfitness, our next step is to determine whether clear and convincing evidence supported the district court's determination that the

16

parent's behavior was unlikely to change in the foreseeable future. See K.S.A. 2017 Supp. 38-2269(a). The term "'foreseeable future'" is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered a period of time as short as seven months as the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Moreover, "[a] parent's actions, not intentions, are the measure to be used in determining likelihood of change in the foreseeable future." *In re M.H.*, No. 117,127, 2017 WL 5951684, at *4 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* December 29, 2017. As stated by our court in *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008):

> "Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time."

In our view, the same reasons which support the district court's finding that Mother is presently unfit—her failure to maintain her progress following the first CINC case and her lack of progress in the second case—also support the district court's finding that Mother will remain unfit for the foreseeable future.

Mother's consistent resistance to obtaining services to treat her mental and psychological health provide clear and convincing evidence to support the district court's finding that she will remain unfit for the foreseeable future. The district court found Mother never obtained a mental health evaluation, and Gahman-Anos and Trayer both testified that Mother's mental health needed to be addressed before the children could be reintegrated with Mother. Trayer further testified that Mother's inability to regulate her emotions affected her ability to adequately supervise the children. Also, Dr. Dirks

17

testified that Mother's failure to consistently treat her diabetes negatively impacts her ability to parent the children. Even though Dr. Dirks advised Mother to obtain a diabetes assessment in February 2016, the district court found Mother had never obtained one. Mother admitted that she did not attend diabetes classes during the present case. Additionally, Mother refused to cooperate with KVC so the agency could verify she was taking her medication by signing a medical release form.

Mother also had not adequately improved her supervision and monitoring skills despite attending family therapy for close to 18 months. Trayer was not certain if Mother could adequately provide the level of structure needed to care for the children due to their special needs. Therefore, Mother's continual resistance to the public or private agencies' assistance and lack of progress throughout the two-year case provides clear and convincing evidence that Mother will remain unfit for the foreseeable future.

II.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DETERMINING IT WAS IN THE CHILDREN'S BEST INTERESTS TO TERMINATE MOTHER'S PARENTAL RIGHTS?

Finally, Mother argues the district court erred in finding that it was in the children's best interests to terminate her parental rights.

Once the district court "makes a finding of unfitness, the court shall consider whether termination of parental rights . . . is in the best interests of the child. In making the determination, the court shall give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2017 Supp. 38-2269(g)(1). As the district court is in the best position to make findings on the best interests of the children, we will not disturb the district court's findings absent an abuse of discretion. *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* October 7, 2010. An abuse of discretion occurs when no reasonable person would agree with the district court or if the court bases its

18

decision on an error of fact or law. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

Mother asserts the district court erred because (1) it improperly blamed Mother for problem behaviors the children developed only after the children were placed with A.R. and (2) it did not make adequate findings regarding whether termination of her rights would harm the children.

Mother's first alleged error does not relate to the district court's best interest findings for determining the termination of Mother's parental rights. The problem behaviors did develop after placement with A.R. and included the children's stealing behaviors, inappropriate touching between the children, and C.R.'s binge eating. The district court found that termination of Mother's parental rights was in the children's best interests, however, because Mother was unable to provide a safe and clean home; and Mother could not adequately supervise and provide a sufficient level of structure, stability, and security to meet the children's special needs. Specific to M.R., the district court found Mother could not adequately care for his special needs based on her inability to recognize his anxiety. Therefore, the district court did not commit Mother's asserted error but rather reviewed whether termination of Mother's parental rights was in the children's best interests based on the evidence and testimony from the hearing.

Mother next relies on *In re K.R.*, 43 Kan. App. 2d 891, 233 P.3d 746 (2010), to support her contention that the district court erred because it did not discuss whether the termination of Mother's parental rights was harmful to the children. In *In re K.R.*, 43 Kan. App. at 904, the panel stated:

> "The statutory requirement directs the court to give primary consideration to the physical, mental, and emotional health of the children. In so doing, the court must weigh the benefits of permanency for the children without the presence of their parent against

19

the continued presence of the parent and the attendant issues created for the children's lives. In making such a determination, we believe the court must consider the nature and strength of the relationships between children and parent and the trauma that may be caused to the children by termination, weighing these considerations against a further delay in permanency for the children. This is of particular concern here, given the clear position of the guardian ad litem, who vigorously advocated against termination and for immediate reintegration. On this basis alone, a reversal of the district court's judgment of termination is required."

*In re K.R.* is factually distinguishable from our case because here the guardian ad litem supported the district court's termination. Moreover, although the district court in our case did not expressly weigh whether the termination of Mother's parental rights would harm the children, the district court found Mother's inability to change her conduct or condition despite two years of court-ordered services provided support that it was in the children's best interests to terminate Mother's parental rights. The district court implicitly considered the need for permanency for the children and Mother's inability to change her conduct or condition to adequately meet the needs of the children during the entirety of the case. Because a reasonable person could agree with the district court and the decision was not based on an error of fact or law, the district court did not abuse its discretion.

Affirmed.